UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:10-cv-131-RJC

| JACKIE EMMITT MOOREHEAD, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | <u>ORDER</u> |
|  | ) |  |
| ALVIN W. KELLER, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**THIS MATTER** is before the court on a Motion for Judgment on the Pleadings by Defendants Betty Brown, Alvin W. Keller, Jr., Robert C. Lewis, and R. David Mitchell, (Doc. No. 41). Also pending before the Court are the following motions by Plaintiff: Motion to Show Frivolousness of Defendants' Brief Supporting Defendants' Motion for Judgment on the Pleadings, (Doc. No. 68); Motion for an Order to Compel Discovery, (Doc. No. 69); Motions for Attachment to Complaint, (Doc. Nos. 73; 74; 76; 77; 79); Motion To Strike, (Doc. No. 80); Motion for Attachment re Declaration, (Doc. No. 81); Motion to Compel Discovery, (Doc. No. 82); Motion for Joinder, (Doc. No. 86); Motion of Omissions and Argument, (Doc. No. 88); Motions for Attachment, (Doc. Nos. 89; 90; 92; 93); and Motion for Prayer to Remedy Previous Documents, (Doc. No. 91).

**I.  BACKGROUND**

Plaintiff, a prisoner incarcerated in the North Carolina Department of Correction's ("DOC") Mountain View Correctional Institution ("Mountain View"), in Spruce Pine, North Carolina, filed this pro se action on June 22, 2010, naming Defendants Secretary of Correction Alvin W. Keller, Jr. ("Keller"), Director of the DOC Division of Prisons Robert C. Lewis

-1-

("Lewis") and Correctional Administrator of Mountain View R. David Mitchell ("Mitchell"). By Order dated July 15, 2010, (Doc. No. 12), this Court granted Plaintiff's June 29, 2010, July 7, 2010, and July 9, 2010 motions to amend. On July 28, 2010, Plaintiff filed a Supplemental Complaint naming as a defendant DOC Director of Chaplaincy Services Betty A. Brown ("Brown"). (Doc. No. 22). After process had been served on all Defendants, this Court granted their motions for enlargement of time and directed them to answer or otherwise plead on or before September 28, 2010.

Plaintiff alleged in his original Complaint, (Doc. No. 1), that prison policy prevented him from writing to his "spiritual advisors." For relief, Plaintiff requested the Court to order DOC to change the policy. Plaintiff's first amendment, (Doc. No. 4), claimed that Messianic Jewish services conducted by Rabbi Larry Artrip ("Artrip") at Mountain View had been stopped in retaliation for Plaintiff's grievance complaining about the policy preventing his writing to Artrip. The only relief requested was that the Court order DOC not to transfer Plaintiff from Mountain View.

Plaintiff's second amendment, (Doc. No. 6), again claimed that Messianic Jewish services had been stopped at Mountain View in retaliation for Plaintiff's grievance complaining about prison policy. Plaintiff requested the Court to order that Messianic Jewish services be reinstated at Mountain View and that "other activities" associated with Messianic and Orthodox Jewish services be allowed. Plaintiff's addendum, (Doc. No. 8), to his first amendment, (Doc. No. 4), claimed that Defendant Brown was responsible for stopping the Messianic Jewish services at Mountain View. Plaintiff further alleged that both the DOC and Brown retaliated against him for submitting a grievance complaining about prison policy.

Finally, in the Supplemental Complaint, (Doc. No. 22), Plaintiff claimed Brown stopped

the Messianic Jewish services at Mountain View and "terminated" Rabbi Artrip and others associated with the provision of Messianic Jewish services and activities. Plaintiff alleged these actions violated his rights under the United States Constitution and Statutes. Plaintiff requested declaratory relief and compensatory relief, including punitive damages.

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard employed in reviewing a Rule 12(b)(6) motion to dismiss. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). Thus, the Court must accept the factual allegations of the claim as true and construe them in the light most favorable to the non-moving party. Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 189 (4th Cir. 2010). To survive a motion for judgment on the pleadings, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. A plaintiff therefore must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling [it] to relief, *i.e.*, the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949).

## III. ANALYSIS

### A. Writing to "Spiritual Advisors"

In his Complaint, Plaintiff alleges that, under North Carolina Department of Corrections policy, he was prohibited from writing to his "spiritual advisors" "[b]y using the excuse that we would become over familiarize [sic] with the volunteer spiritual advisors (leaders). By having

written correspondence with them, there by [sic] creating a security risk." (Doc. No. 1 at 4). An administrative grievance decision, attached to the Complaint, describes Plaintiff's claim as follows:

> Inmate Jackie Moorehead filed this grievance on January 19, 2010, at Mountain View Correctional Institution complaining about not being allowed to correspond through the postal system with the spiritual advisor that came into the institutions. Staff responded that an investigation of inmate Moorehead's concern revealed that volunteers were prohibited from corresponding with inmates at the facility they provided services at. Staff stated that all approved volunteers completed a thorough and comprehensive orientation program and as part of this were instructed not to correspond with an inmate by mail or telephone. Staff noted that failure to adhere with these directives could result in the individual being terminated as a volunteer due to over familiarity with an inmate.

(Doc. No. 1-4).

At most, Plaintiff is alleging that he was not allowed to correspond with various volunteers who worked at the prison, whom he describes as his "spiritual advisors." As a general rule, prisoners have a constitutionally protected interest in their incoming and outgoing mail correspondence. Kaufman v. McCaughtry, 419 F.3d 678, 685 (7th Cir. 2005) (citing Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999) (citations omitted)). Persons outside of prison also have an interest in corresponding with prison inmates. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989). Prison officials may, however, impose restrictions on prisoner correspondence if those restrictions are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). When evaluating the constitutionality of prison regulations, courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citations omitted).

The Court will grant Defendants' motion for judgment on the pleadings with regard to

Plaintiff's claim that he was not allowed to write to his spiritual advisors. Plaintiff's administrative grievance decision states that persons who volunteer at the prison are not allowed to correspond with prisoners so as to prevent "over-familiarity with an inmate." The Prison Regulations attached to Defendants' Answer and which apply to volunteers at the prison, state, in relevant part: "Persons who have or have had an intimate, romantic or unduly familiar personal relationship with an inmate including, but not limited to intimate, romantic or unduly familiar physical contact, conversation or correspondence may not provide volunteer services for that inmate nor may they provide volunteer services at the facility [where] the inmate is housed." (Doc. No. 40-2: State of North Carolina Department of Correction Division of Prisons, Policy and Procedure, Chapter F, Section 0604(b)(7), titled "Community Volunteer Program").

Here, the prison regulation at issue is clearly addressed to protect prison employees as well as volunteers by prohibiting volunteers from becoming unduly familiar with the inmates. As such, it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. Plaintiff has simply failed to state a legally cognizable claim based on his contention that he is not allowed to correspond with the prison's volunteers, whom he describes as his "spiritual advisors." Therefore, Defendants are entitled to judgment on the pleadings as to this claim.

B. Cessation of Jewish Messianic Services

Plaintiff brings a claim that he describes as a First Amendment claim, in which he complains that the prison stopped allowing Jewish Messianic Services to be held at the prison. Defendants contend that Plaintiff failed to exhaust his administrative remedies with regard to this claim. For the following reasons, the Court agrees.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA

provides, in pertinent part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that under the PLRA, exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. Id. In Woodford v. Ngo, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Id. at 211 (citing Porter, 534 U.S. at 524).

As noted, Plaintiff alleged in his Complaint that he exhausted his administrative remedies with regard to his claim based on the cessation of Messianic Jewish services at the prison. Plaintiff's Grievance Number 4855-2010-487, which complains of cessation of Messianic Jewish services, is dated July 21, 2010. Plaintiff filed his Complaint in this lawsuit on June 22, 2010. Plaintiff did not plead whether his grievance had been ruled on. Thus, the grievance form submitted by Defendants contradicts Plaintiff's contention that this claim has been exhausted.[1]

---

[1] When a document attached to the pleadings contradicts the allegations of the complaint, the document controls in a Rule 12(b)(6) motion to dismiss. Nishimatsu Constr. Co.,

For this reason, Plaintiff's claim regarding the cessation of Messianic Jewish services must be dismissed without prejudice for failure to exhaust administrative remedies.

**IT IS THEREFORE ORDERED** that:

1. Defendants' Motion for Judgment on the Pleadings, (Doc. No. 41), is **GRANTED**. Plaintiff's claim that he was denied the right to correspond with his spiritual advisors is dismissed with prejudice. As to Plaintiff's claim regarding the cessation of Messianic Jewish services, this claim is dismissed without prejudice.

2. In light of the Court's ruling on Defendants' Motion for Judgment on the Pleadings, the following motions by Plaintiff are **DENIED** as **MOOT**: Motion to Show Frivolousness of Defendants' Brief Supporting Defendants' Motion for Judgment on the Pleadings, (Doc. No. 68); Motion for an Order to Compel Discovery, (Doc. No. 69); Motions for Attachment to Complaint, (Doc. Nos. 73; 74; 76; 77; 79); Motion To Strike, (Doc. No. 80); Motion for Attachment re Declaration, (Doc. No. 81); Motion to Compel Discovery, (Doc. No. 82); Motion for Joinder, (Doc. No. 86); Motion of Omissions and Argument, (Doc. No. 88); Motions for Attachment, (Doc. Nos. 89; 90; 92; 93); and Motion for Prayer to Remedy Previous Documents, (Doc. No. 91).

---

Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).

Signed: February 29, 2012

Robert J. Conrad, Jr.
Chief United States District Judge